Good afternoon, Your Honors. My name is Armin Ibrahimian, and I represent the defendant-slash-petitioner. Could you speak up a little bit? Thank you. Yes. So this is a case about an individual who was granted citizenship 22 years ago, and 20 years after he took his oath and he became a citizen, the plaintiff moved to revoke his citizenship. The plaintiff is alleging that he did not have good moral character all throughout the statutory period. The petitioner was, six months after he took his oath and became a citizen, he was charged with a crime, and he fought the charges. He took it to a jury trial. There was a hung jury, and after the hung jury, there was another jury trial, and he was convicted of false imprisonment and robbery, and the record is clear that it had to do with a business dispute with his business partner. He's alleging that his business partner owed him a lot of money, and he was set up. It is true he was convicted, and now we're looking back and saying, well, he may not have had good moral character during the statutory period. The law dealing with revocation clearly states that under two circumstances the government can revoke citizenship. If the citizenship was illegally procured or if there was some kind of material or willful misrepresentation. The statute in itself does not say that if you lacked a good moral character, then you shall be stripped or your citizenship should be revoked. Sorry, I'm nervous. The law does state that illegal procurement, and it does define what is unlawful procurement. It says if you're knowingly procuring naturalization in violation of the law, and that's under Code Section 1451. I thought that Fedorenko has been read to say that essentially if you didn't legally get naturalization because you didn't meet the criteria, then you illegally got naturalization. I mean, that isn't necessarily the only way to read the word illegally, but it seems to be the way it's been read. Right. In that case, we're dealing with an individual who completely misrepresented himself. I understand that, but I'm saying that the understanding since then, uniformly as far as I could tell, has been that if he didn't meet the criteria, then he obtained it illegally. There's been an analysis of good moral character, and there has been a case-by-case determination more or less. So in these cases that I have before me or that I researched, I didn't find a Ninth Circuit case that clearly explained what it is, an unlawful procurement. However, there is a lot of analysis about good moral character and misrepresentation, and also other cases, the ones that I came across dealing with, like a conspiracy to distribute crack cocaine, or that individual had a prior arrest but was not charged. The cases are different. My argument is that the knowing element is important, and I believe that if you read the cases, the defendant's state of mind is somewhat analyzed. Where is the knowing state? Where is that line? Okay, the knowing part is under 8 U.S.C. Code Section 1451 when it deals with the revocation of naturalization. And it states, so when a person shall be convicted under 14.25, and 14.25 is the key section, procurement of citizenship of naturalization unlawfully. So there's a knowing element. And even when you take your oath, the day you take your oath. Section 1451 is the revocation of naturalization, and it says that it shall be the duty of the United States attorneys to revoke and set aside if on the ground that such order and certification of naturalization were illegally procured. So where is the knowingly language? When a person shall be convicted, so knowingly procuring naturalization in violation of the law under 14.51? 14.51. I'm sorry, but I'm having trouble finding it. That's okay. I think we're reading different sections here. I think Judge Berzon is reading from the A. Are you reading from a different section in 14.51? E, citizenship unlawfully procured. Section E. But that's a completely different section than this one. But also 14.25, the procurement of citizenship of naturalization unlawfully. So it does say whoever knowingly procures or attempts to procure. But that's not the section that's applicable here. That's, as I understand it, a section that says that that's a criminal section for knowingly procuring naturalization in violation of law, and it says that if you're convicted of that, you also get to naturalize. But that's not – but A is independent of that, isn't it? So are you referring to 14.27A? Is that the point? You're saying that that's the only section that we should be looking at? 14.51A. 14.51A. Yes, okay, exactly. So 14.51A states that under two circumstances, right, illegally procured and procurement by concealing material fact. All right, we're not dealing with the second because he wasn't – Right, exactly. We're dealing with the first. The question is, does illegally procuring naturalization mean simply procuring it when the law didn't provide for it, or does it mean doing something to procure it illegally, like lying or something like that? The argument I'm making is that the statutes, the U.S. codes, that's why I referred to 14.51 that talks about the unlawful procurement. They are adding a knowing element, and my argument is that – I didn't even see that argument in your brief. Right. To be honest, this is the first time I'm arguing this case, and I did my best with it, but – But just so I understand your position – I did make the knowing argument, sorry. But to understand the argument that you're now advocating here, if I were to say – if I were in someone's shoes and I were to say I was convicted of a fraud crime, okay, and I said, you know what, I didn't think it was fraud. My accountant told me it was okay to take these deductions, but a jury came back and found that I was guilty of tax evasion. Your position would be I could still not have the section apply to me if I came into court and said, well, I know I was convicted of it, but I really thought I was innocent of it. Okay. If in that case – I do think it's a case-by-case determination, right? And if in that case the individual had no other arrests or no other – there's no – this individual has never had any other problems with fraud and you're showing a clean record, and we look back 20 years later, then yes, I do believe that revoking his citizenship is not in the interest of justice. Okay, but that's a different – but let me make sure that's a different argument, because the argument you could be making in this case, but I didn't see it, which is what I wanted to ask you, is you could make a laches argument or some sort of argument to the government by not taking action, by waiting 19 years, and I imagine members of this panel are going to have a lot of questions for the government as to why they waited 19 years, but I didn't see an argument in your brief or before the district court saying that this should be thrown out on that basis. Was that argument ever made previously? No. It is my understanding that that laches doesn't apply. However, since it is a case – in my understanding it is a case-by-case determination, I'm arguing that in this case revocation is not in the interest of justice, because, in fact, he did claim his innocence from the first moment. He did not have that intention when he was sworn, and he signed the paper that says, Have you knowingly committed a crime? He said no, and until this day, he says that I was set up. I was charged six months after the crime. If I kidnapped somebody or if I false imprisoned somebody, why did they wait so much time to file these charges? Now, all that said and done, he was convicted. It's true. However, when we look back, it is a question of did he illegally procure? Did he have that knowing intention? And the truth is that I'm arguing that he didn't. I did argue that knowing element in my briefs, but now that I look back and there are other sections in the U.S. Code that do also define unlawful procurement with that knowing element. You seem to be saying you've selected one equitable doctrine to argue to us in lieu of another. Is that it? You don't think latches gives you any relief, but you want us to resort to some notion of fair equity? I think so. I think that that's reasonable, right? I mean, here we are saying what is illegal procurement. The language isn't clear. The U.S. Code talks about good moral character. If the U.S. Code wanted to say if the person lacks moral character, you must revoke his citizenship, I would understand. I would have no argument before you. However, the Code doesn't really say that. It argues illegal procurement, and it is true. There are some cases that say this person lacked good moral character, but when I looked at those other cases, like Fedorenko, there was clear misrepresentation. Other cases in the 11th Circuit where the person conspiracy to distribute crack cocaine, well, that person can't look back and say, I didn't know that I was – I mean, he didn't make that argument. He didn't make that argument that I didn't have that knowing intent. In this instance, he was – the allegation is that he committed the crime before he was naturalized, although he wasn't charged or convicted until afterwards. Right. Days before he took his sworn in, the incident occurred. And he – although he was originally charged that he essentially lied, that was not what was found. So – but the question is whether this statute, which governs naturalization, doesn't require that as long as he committed the crime during the relevant period, even if he was convicted afterwards, there's a mandatory refusal of denaturalization – of naturalization. In other words, let's look at it forward instead of back, okay? And suppose they hadn't waited 20 years. Suppose the day he was convicted they said, okay, you're now going to lose your citizenship. Would he be – would you be making the same argument? The statute says that if he was convicted of a crime – a moral turpitude, basically, where he – It was a crime for which he was convicted and it was committed during such period. But it doesn't say he had to be convicted during such period. Right. I'm not arguing necessarily that he had the requisite good moral character. I understand that an argument can be made he lacked good moral character because that incident occurred, even though I'm arguing that it's not necessarily an illegal procurement. If – I think the state of mind and if we – if we pick at the law, the state of mind does matter because, like I said, the day that he takes that oath he feels out of form and asks them, did you knowingly commit any crime for which you were not arrested? He put no. There's a reason why we use that knowingly language and when we look at the law, it does – there is – when you're dealing with an illegal act, at least before us with the citizenship issue, there is a knowing element. So you're largely conceding that he lacked good moral character? The law says. So there is. I'm not going to argue what the law says. The law does say that if you – It has to have. then – and if you look back, then – and if you were convicted of it, yes, I see the law. So I don't know how far I could get with that argument that he – that he necessarily had the good moral character, even though I'm arguing for him that he did not knowingly commit. And the law – and I also made that argument that the justice system is flawed and there are individuals who are convicted and he happens to be one of them who's adamant about it and he has not committed a single – he doesn't even have a DUI or he claims not even a ticket. So we're talking – so when we look back, we say, well, you know, maybe the justice system failed him. However, I guess I can't make that argument because he was convicted. But the argument I want to make is saying that you illegally procured your citizenship is not necessarily – they're not equal. Just because he lacked good moral character, looking back, not necessarily. I'm not saying there are other cases it's true when there's misrepresentation, when there's somebody who was distributing pounds of –  Oh, I'm sorry. So what is your best argument for our authority to import into this statute a scienter requirement? That illegal procurement – that when we look at the word illegally or unlawfully under the federal statutes, there is a knowing element. Some other statute. Under the same train of thought, the revocation of naturalization. I'll give you a minute in rebuttal, no matter what. But you mentioned that the form that he filled out said knowingly. Did it say knowingly? Absolutely. That form that they fill out before they take their oath, the day, there's a form they fill out, and the word knowingly is there. The intent is absolutely important. And revoking somebody's citizenship 20 years later, that's no joke. I mean, he's been voting. He's a citizen. And now they're telling him, sorry, you're not a citizen. And not only that, but he may be deported after this whole thing is resolved. Okay, thank you very much. Thank you. This will be the last 20 minutes, or you can wait. 20 seconds. Thank you very much. 20 seconds, sorry. Okay, yes, sir. Thank you, Your Honor. If it pleases the Court, I'm Troy Liggett from the Department of Justice here representing the United States. The district court in this case was required to revoke Mr. Zhao's naturalization. Well, first of all, it would be interesting if you happen to know why it was 20 years later. That is not in the record. I don't know, Your Honor. But that colors, it seems to me, what you think these statutes mean. Because, for example, the CFR says that reasons for being, for having bad moral character would be that you committed two or more gambling offenses. You earned your income from illegal gambling. You were a habitual drunkard. You willfully failed or refused to support. Dependent, you had an extra marital affair who tended to destroy your existing marriage. So 20 years later, somebody could decide that somebody had an extra marital affair which tended to destroy an existing marriage and revoke his naturalization? Your Honor, in a case like that where there could be undisputed, or there could be disputed evidence on the record, it seems to me. Well, fine, but you're saying now we have a trial 20 years later and we decide that, in fact, he had an extra marital affair before he was naturalized, and, therefore, he's no longer a citizen. In this case, the facts are undisputed. I know, but I'm trying to understand the statute. Right. Is that what you're saying? That if it were proven now that 20 years ago, before he was naturalized, he had an extra marital affair that tended to destroy an existing marriage, they could be just naturalized? If those were undisputed facts today, yes. So illegally just means anything that would have made you not eligible to begin with, even if you didn't do anything culpable in hiding it or concealing it or anything? Illegal means you did not meet the requirements at the time you naturalized. That's not an obvious meaning of illegal. Illegal usually means you did something illegal with regard to the naturalization. Because here, as I understand the statute the way you're reading it more specifically, or at least part of it, is that he did something, he committed an offense, he was not charged and convicted of it until later. Correct. And you're saying essentially, or maybe, I'm not sure you're saying, sometimes the government seems to say this and sometimes not, that the statute means that as long as he is convicted afterwards for something he did before, he was then illegally obtained naturalization. How can that be? Because at the time he was naturalized, he wasn't eligible to not be naturalized. He hadn't been convicted yet. If I'm following you correctly, he has the responsibility to demonstrate that during the statutory period, he had the requisite good moral character. Okay. But at the time of naturalization? At the time of naturalization, yes. He hadn't been convicted yet? Correct. All right. So how did he illegally procure naturalization when the naturalization statute requires that he have to eventually at least be convicted? Yes, and he was eventually convicted. I understand that. But he didn't illegally procure the naturalization because at the time he was naturalized, he hadn't been convicted. USC 1101F defines categories of people who are not eligible for naturalization. Okay. And subsection 3 of that addresses crimes involving moral turpitude. Okay. That statute generally would be applied at the time someone naturalizes. Right. And it says you have to have been convicted of it. Well, it says that you have to be convicted as long as it was committed during such a period. But on the other hand, if you weren't convicted yet, how does anybody know whether you illegally obtained the naturalization? You didn't. The fact is that he committed the act during the statutory period. Right. Okay. Whether or not he's convicted, I guess there's still an open question on whether or not 3 would apply. He wasn't charged, right? He wasn't charged. He wasn't convicted. Correct. In what meaningful sense did he illegally obtain naturalization? Because he... He might never have been charged or convicted. If he had never been charged and convicted, that's not necessarily a different story. There is a catch-all provision at the end of Section 1101 that says, and anything else that happens during the statutory period. So if he beat someone up on the street, was never arrested, was never convicted, but the evidence could show that, you know, this is not a person who possesses good moral character in review. Okay. And then you come back 20 years later and say, you know, we just found out that he beat somebody up on the street before he was naturalized. If that case was brought and a judge determined by the standards in the community that during the statutory period he didn't have the requisite good moral character and a district court reviewed those facts to determine they were true, he could. What is your best case for that? The language I'm focusing in now is illegally. I understand that Fedorenko had some broad language, which has read to mean sort of what you're saying. But it wasn't what Fedorenko was about, because Fedorenko was about somebody who concealed information. Who concealed that he was a Nazi. Right. So is there a case in this court that has actually read the word illegally the way you're saying, i.e., anything that, even if it happened after the fact, that would have made you? I don't know a court that hasn't read it that way, Your Honor. I think in general they start at step one. Illegal procurement means you did not meet the requirements at the time. And the analysis goes from there. So there's nothing to cause yourself to get naturalization for that reason, because in this instance he hadn't been convicted in that. I understand that there's also the catch-all. The catch-all, however, has exceptions. It has. You have to demonstrate that there weren't extenuating circumstances in the case, yes. It has those exceptions. So is there any case holding that the catch-all applies retroactively like this? Applies retroactively in what regard? Meaning after, not prospectively as a reason to deny naturalization in the first place. Right. But as a denaturalization reason. Are there cases like that? The Seventh and the Eighth Circuits. Suarez in the Seventh Circuit looked back on this and said, it doesn't matter when you were convicted. Jean Baptiste in the Eleventh Circuit. One of them did it under the catch-all, I think. Was it John Baptiste was under the catch-all? Yes. John Baptiste. Was the other one under the catch-all too, Suarez? Suarez held that. I know. These cases are funny because they kind of qualify under both, and some courts choose one, some courts choose the other. And off the top of my mind, I don't know. I'm sorry. In the Eighth Circuit, in Al-Akwarez. What I take it for your position is that under the catch-all, I'm trying to change the facts of this case slightly. Let's say the defendant was never convicted of these crimes, but entered into a civil settlement with the victim. And as part of a civil settlement, he admitted, okay, on this date in 1994, I did X, Y, Z, one through three. And your position would be, even if there's no conviction under the catch-all, that factual basis signed by the defendant as part of a civil settlement could serve as the catch-all for removal of the defendant, or denaturalization, I should say. If a district court judge reviewed the facts of the case and determined that those actions during the statutory period did not meet the general, the community standards for good moral character, yes. But that language... So in order to get there in terms of the term illegally, you have to combine the catch-all in the statute, which says the fact that any person is not within any of the foregoing classes shall not preclude a finding that, for other reasons, such a person is or was not of moral character, right? With the regulation which says that the service shall evaluate claims of good moral character on a case-to-case basis, taking into account all the elements enumerated in the section and the standards of the average citizen, which is a very general thing. And then this list of shall be found, which are simply directives by the agency. Is that right? You're right, Your Honor. So, and you're saying that that amounts to illegally... Were these regs in effect at the time that he was denationalized? I believe... But nationalized in the first place. I believe they were. I know that this Court has found that those regulations are not altruistic to the statute. I understand, but I want to know whether they were in effect at the time he was nationalized. I believe they were, but I'm not certain. Okay, let's suppose they weren't. Just as, I mean, let's take... Right, right. Okay. Then was he illegally, did he... I would say yes if a district court judge weighed his good moral character to the standards in the community under 1101F, the catch-all, and made the determination that he was not... A district court judge decided that he was just a bad guy 20 years ago? That's how the naturalization statute works, yes. Because de novo review of the district court. Yes. And the government has a very high standard... For original naturalizations as well as subsequent denaturalizations. Yes, de novo review by a clear and convincing evidence standard. It's a very high standard. So for the district court, then, these regs say that the service shall evaluate claims of good moral character on a case-by-case basis, and then it says finding of lack of good moral... You think that's directed to the district court? These regs are binding the district court? It is directed to the agency, although district courts have adopted it. I suppose a district court said, well, I'm sorry, but I don't actually think that having an extramarital affair which tended to destroy an existing marriage is an example of bad moral character 20 years ago. I don't know the case off the top of my head, but in the 60s there were many cases in that regard, on cases brought by the agency talking about extramarital affairs, and many courts found that this isn't in our community. But the district court, what I'm trying to ask you is, is the district court bound by that? I suppose he said, as far as I'm concerned, that's not bad moral character. Not necessarily, no. He's not necessarily bound? No. I believe he would have to find that at the time, I guess that the agency should have found that he was or was not of good moral character, but it is the district court's under de novo review. It's a very strange way to run people's lives for 20 years. I mean, something that amorphous and that vague and that malleable. Your Honor, in this case he was convicted of two felonies after he was arrested and convicted after he'd actualized for actions that happened during the period. Weren't you at least curious when this case walked through the door from DHS, didn't you question the agent? I don't want to press this too strenuously, but you surely must be curious. What are you asking me to do here? I could tell you that I was an attorney. What are you asking me to do? You surely must have said that. You know, it's not on the record it was questioned that I don't know. I didn't get an answer. I can tell you there's nothing to my knowledge that the government wasn't diligent in this, and I can tell you that in our cases with the advent of the Internet, a lot of this information, how would the government have known back in 1994 without the Internet that he had committed these crimes? I'm curious about the 1999 reissuance of the certificate to get to Judge Davis's point. I understand at 1994 when he was sworn maybe they didn't know about the conviction, but in 1999 when they gave him a duplicate copy, I mean, surely they would have had some idea this guy just got out of prison to give him the copy. That's a good question. I don't know. What about extenuating circumstance? For example, that one, the fact that after he got out of prison he asked for a duplicate and he got it, and he ran his life on that basis for another 16 years or something. Extenuating circumstances relate to the actual commission of the crime. Why? Whether or not he was more culpable. How do we know that? Let's assume that we're dealing with a catch-all, okay? Why is that? We're dealing with denaturalization and the question of whether he procured it illegally. Where does it come from that the extenuating circumstance has to go to the crime? First, the extenuating circumstances isn't a part of the statute, isn't a part of 1101F. The extenuating circumstances is a part of the regulations. I understand that. Neither is the fact that if you committed a crime that you weren't convicted of in the statute either. That's on the regs. We generally rely on Jean Baptiste in the Eleventh Circuit when they addressed extenuating circumstances. Okay, that's what they said. Tell me why I should say it. Why should it be relevant that the guy's been here 20 years, he hasn't committed a single other crime, and that not only that, you gave him a piece of paper reiterating that he was a citizen. Because under Federico, illegal procurement relies on the fact of whether or not he was qualified for naturalization. And he had to demonstrate during the statutory period. Let's assume that we're talking about the catch-all, which has an extenuation exception, as I understand it. It's circular to say because he did it, he did it illegally. Whether he did it illegally depends upon whether there are extenuating circumstances. Well, I understand. I see what you're saying. We're looking at what happened at the time in terms of whether he procured it illegally. Right. I guess, maybe. But I mean, what extenuating circumstances? Nobody told him that he was under any threat or problem for this. And, you know, whether or not the government could or did, whether or not the government actually found out six months later that he was convicted of these crimes is important, but not important here because the government doesn't find out all the time. I think in Dang, from this court, it addressed that a lot of the major decisions on denaturalization involved cases where the government found out 20 or 30 years later. And I believe in Costello, the last time the Supreme Court discussed whether latches should apply. Any of those cases, cases that didn't involve misrepresentation or lying at the time of getting the naturalization? Yes, I believe so. I think Costello, well, Costello, he claimed he was a real estate agent on his application, which, in truth, he was a bootlegger during Prohibition. So he lied. Right. This person didn't lie about anything. This person? In our case. In our case, he was asked if he was arrested for a crime that he had committed during the statutory period, and he answered no. And a jury of his peers found out six months later that, in fact, he did. But he hadn't been arrested. Right. But by the conviction documents, he committed those acts that a jury of his peers decided six months later. Is she right, by the way, that it said knowingly? No. Legal procurement simply is. No, no, in the form. She says the form he filed said knowingly. I don't know. I haven't looked. In the form that he filled out just before his naturalization. In 1994. There is a knowing element on the misrepresentation fact, yes. He does, if it's a material fact, he has to knowingly misrepresent. Okay. Yes. So it asked him whether he committed it. Did it ask whether he knowingly committed it? Yes, I believe so. Okay. And he says, well, I didn't, you know, it turns out I was convicted, but I didn't think I did anything. That question has changed over time, and that wasn't an issue here. I'm curious about that, by the way, if you have it. I have it in my notebook. All right. But, I mean, maybe write us a letter or something. I will do that. Okay. Thank you very much. Thank you. We'll give you one minute in rebuttal. I want to argue that there is extenuating circumstances. So what is extenuating circumstances? So it's a factor that renders a crime less aggravated so that it tends to palliate or lessen its guilt. So in this case, the fact that he was adamant that he was innocent and he took it to jury trial, that it was a hung jury, and that it's very clear from the record that it was a business dispute. It's not like he went into somebody's home and robbed them. Robbery is terrible. And if you read the statute, it's ugly. A felonious taking a personal property in the possession of another. He didn't even tell any of that or anything in the record. He was convicted of robbery, right? Okay, well. But it's very clear that it stemmed from a business dispute, from his business partner. And even if you read the. . . They seem to be two different victims. They dropped the charges on that one. No, they didn't. I looked at it. He was convicted of robbing one person and of falsely imprisoning another. So the kidnapping for robbery was. . . Not kidnapping, I know that. But the false imprisonment was a different victim. The false imprisonment was. . . It was my understanding that it was the same person. It was the same business partner that he referenced. The Stephen. . . The charges against the Stephen Louis individual were dropped. And he was supposedly there when it happened. But in any case, my argument is there are extenuating circumstances because, like I said, he fought the case from the beginning. He took it to jury trial. There was a hung jury. And also there's no other arrests or no other convictions prior or after. And even if we look back. . . If they're bringing this case 20 years later, then, of course, why not? Why can't we look at extenuating circumstances by looking to see, has he committed any violent crimes since? Okay. Thank you. May I ask you very quickly? Sure. If we affirm, does he go back to legal residence? They could take his residency away because. . . Yeah, but the immediate effect of any. . . Technically, yes. Judgment affirming the district court here would. . . He'd go back to. . . Technically, yes. And then they would have to. . . New proceedings. And he'd be entitled to. . . So he should be entitled to a waiver. Although it's. . . That's. . . Right, right. But I understand. Okay. Thank you. Thank you. Thank you very much. Thank both of you for the arguments. United States v. Zell, if that's how one says it. And we will go on to. . .
judges: Berzon, Owens, Davis